IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:23-CV-318-RJ

NIKKI LASHAUN CANADY,

        Plaintiff/Claimant,

v.

MARTIN O'MALLEY,
*Commissioner of Social Security*,

        Defendant.

O R D E R

This matter is before the court on the parties' briefs filed pursuant to the Supplemental Rules for Social Security Actions. [DE-13, -14]. Claimant Nikki Lashaun Canady ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the denial of her application for Supplemental Security Income ("SSI") payments. Claimant filed a response to the Commissioner's brief, [DE-15], and the time for further responsive briefing has expired. Having carefully reviewed the administrative record and the briefs submitted by the parties, the decision of the Commissioner is affirmed.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for SSI on October 22, 2021, alleging disability beginning May 1, 2021. (R. 17, 146–55). The claim was denied initially and upon reconsideration. (R. 17, 64–78). A telephonic hearing before the Administrative Law Judge ("ALJ") was held on November 15, 2022, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 17, 31–63). On November 29, 2022, the ALJ issued a decision denying

Claimant's request for benefits. (R. 14–30). On April 20, 2023, the Appeals Council denied Claimant's request for review. (R. 1–6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

2

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 416.920a(e)(3).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful activity since October 22, 2021, the application date. (R. 19). Next, the ALJ determined

3

Claimant had a Baker's cyst in the right leg that was a severe impairment, a back impairment and history of oral cancer that were non-severe, and depression that was a not a medically determinable impairment. (R. 19–20). However, at step three, the ALJ concluded the impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 20–21).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform medium work[1] with the following limitations:

> frequent full rotation of neck vertically and laterally; occasional use of right nondominant lower extremity to operate foot and leg controls; no climbing of ladders, ropes and scaffolds; and no working around dangerous, moving, mechanical parts and unprotected heights.

(R. 21–26). In making this assessment, the ALJ found Claimant's statements about her limitations not entirely consistent with the medical and other evidence of record. (R. 22).

At step four, the ALJ concluded Claimant was unable to perform her past relevant work as a bakery worker. (R. 26). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant was capable of performing other jobs that exist in significant numbers in the national economy. (R. 26–27).

## V. DISCUSSION

Claimant contends the ALJ erred by failing to resolve apparent conflicts between the VE's testimony and the Dictionary of Occupational Titles ("DOT"). Pl.'s Br. [DE-13] at 10–18; Pl.'s Reply [DE-15]. The Commissioner contends the VE's testimony did not conflict with the DOT. Def.'s Br. [DE-14] at 6–17.

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If someone can do medium work, they can also do sedentary and light work. 20 C.F.R. § 416.967(c).

4

The ALJ may utilize a VE at steps four and five "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). For a VE's opinion to be "relevant or helpful," it must be given in response to a proper hypothetical question. *Id.* A proper hypothetical question "fairly set[s] out all of claimant's impairments" that are supported by the record. *Id.*; *Russell v. Barnhart*, 58 F. App'x 25, 30 (4th Cir. 2003) (per curiam) (holding the ALJ's hypothetical question "adequately contemplated all of [claimant's] impairments and resulting limitations" as evidenced by the record).

Pursuant to SSR 00-4p, the ALJ must "inquire, on the record, . . . whether the vocational expert's testimony conflict[s] with the [DOT], and [the Ruling] also requires that the ALJ elicit a reasonable explanation for and resolve conflicts between the expert's testimony and the [DOT]." *Pearson v. Colvin*, 810 F.3d 204, 207–08 (4th Cir. 2015) (internal quotation marks omitted) (citing S.S.R. 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000)). However, not "all possible conflicts must be identified and resolved," but rather only "apparent conflicts," i.e., "where the expert's testimony seems to, but does not necessarily, conflict with the [DOT]." *Id.* at 209. The ALJ must elicit from the VE "a reasonable explanation for the apparent conflict," S.S.R. 00-4p, at *4, and the ALJ has not fulfilled his duty to fully develop the record if it "contains an unresolved conflict between the expert's testimony and the [DOT]" or if the ALJ "ignores an apparent conflict because the expert testified that no conflict existed," *Pearson*, 810 F.3d at 210. "An expert's testimony that apparently conflicts with the [DOT] can only provide substantial evidence if the ALJ has received this explanation from the expert and determined that the explanation is reasonable and provides a basis for relying on the testimony rather than the [DOT]." *Id.* at 209–10.

5

Based on the VE's testimony, the ALJ found three representative jobs that Claimant could perform given her age, education, work experience, and RFC: machine package sealer (DOT # 920.685-074); hand packager (DOT # 920.587-018); and bagger (DOT # 920.687-014). (R. 27, 57–58). Claimant contends that each of these jobs requires working around "dangerous, moving, mechanical parts" and the bagger job may also require climbing ladders, all of which are precluded in the RFC. Pl.'s Br. [DE-13] at 10–16. The Commissioner contends that none of the jobs includes these requirements. Def.'s Br. [DE-14] at 9–13.

Beginning with the machine package sealer and hand packager jobs, the DOT specifically states that moving mechanical parts are "not present" in these jobs. *See* DICOT 920.685-074 & 920.587-018. This is consistent with the VE's testimony that the jobs of machine package sealer and hand packager could be performed with a limitation to no working around moving mechanical parts. (R. 56–58); *see Joyce H. v. Kijakazi*, No. CV 22-3152-CDA, 2023 WL 7554189, at *4 (D. Md. Nov. 14, 2023) (rejecting argument that a restriction from exposure to moving machinery conflicted with the hand packager job's requirement of regulating conveyer speed because "[a] review of the DOT entry for the job of hand packager reveals that this job does not involve exposure to moving mechanical parts."). Notwithstanding, Claimant contends that the job descriptions indicate they involve work utilizing a conveyor belt, which some courts have found to be dangerous moving machinery involving moving mechanical parts. Pl.'s Br. [DE-13] at 11–14. The cases cited by Claimant are not persuasive as applied to this case.

In the case of *Aho v. Comm'r of Soc. Sec. Admin.*, the court recognized a "potential issue" with the folding machine operator job, DICOT 369.686–010, which required the worker to feed laundry onto a feeder conveyor belt and to remove jammed articles from the machine. No. CIV.A.

6

10-40052-FDS, 2011 WL 3511518, at *12 (D. Mass. Aug. 10, 2011). The court reasoned that "[b]ecause there is no indication that plaintiff has ultimate control over this machine's movements, it may fall within the category of 'dangerous moving machinery.'" *Id.* (citing *Oyola–Rosa v. Sec'y of Health & Human Servs.*, 1992 WL 387678, at *9 (1st Cir. Dec. 30, 1992)). First, there is no indication that the *Aho* court considered the fact that the DOT expressly states that moving mechanical parts are not present for the folding-machine operator job. *See* DICOT 369.686–010. Second, the machine package sealer job is characterized as a "tending" job involving "[s]tarting, stopping, and observing the functioning of machines," and the hand packager job description expressly states that it involves starting, stopping, and regulating the speed of the conveyor. *See* DICOT 920.685-074, 920.587-018 & App'x B. The folding machine operator job discussed in *Aho* was not a "tending" job but rather a "feeding-offbearing" job, which involves operating machines that are "automatic or tended or operated by other workers." DICOT App'x B. Thus, the concern of the *Aho* court with the lack of control over the machine in the folding machine operator job is not present with the machine package sealer and hand packager jobs at issue here because the DOT is clear that a worker performing those jobs has control over the machine. Finally, the *Aho* court did not find that a job involving a conveyor belt necessarily involves moving mechanical parts. *See* 2011 WL 3511518, at *12. Thus, *Aho* is materially distinguishable from the instant case.

Similarly, in *Gibson v. Kijakazi*, the court stated without analysis that the job of nut sorter was "likely" inconsistent with a need to avoid frequent exposure to moving machinery. No. 2:20-CV-00559, 2021 WL 5277132, at *2 (S.D.W. Va. Nov. 12, 2021). The court nevertheless found, based on other jobs offered by the ALJ, that the VE's testimony was consistent with the DOT. *Id.*

7

at *3. Although the magistrate judge noted that "'common sense would seem to dictate' that the toy stuffer position requires exposure to moving mechanical parts and production-rate pace, the DOT description simply does not require that conclusion . . . ." *Id.* In the present case, as explained above, the DOT expressly states that moving mechanical parts are not present for the jobs at issue, and Claimant's speculation otherwise is insufficient to undermine the VE's testimony consistent with the DOT.

Turning to the bagger job, Claimant suggests that the job requirements of pushing a shopping cart to a customer's vehicle, collecting carts from the parking lot, and assisting in unloading delivery trucks conflict with the limitation to not working around dangerous moving mechanical parts. Pl.'s Br. [DE-13] at 14. Claimant cites no authority for this position but theorizes that a delivery truck is a motor vehicle that moves and that *if* a mechanical liftgate or a forklift were used to unload the truck, it would violate the prohibition against working around dangerous moving mechanical parts. *Id.* at 15. As with the other jobs, the DOT expressly states that moving mechanical parts are not present for the bagger job, DICOT 920.687-014, and Claimant's speculation to the contrary is insufficient to create a conflict between the VE's testimony and the DOT where there is none. *See Phipps v. Comm'r of Soc. Sec.*, No. 5:22-CV-00085-DSC, 2023 WL 105331, at *4 (W.D.N.C. Jan. 4, 2023) (finding the job of bagger does not "comport with the definition of exposure to dangerous machinery"); *Voorhies v. U.S. Comm'r of Soc. Sec.*, No. 6:21-CV-1341, 2022 WL 4493004, at *7 (W.D. La. Sept. 2, 2022) (finding no conflict between the testimony of the VE and the DOT regarding prohibition on workplace hazards for the bagger job where moving mechanical parts did not exist within the DOT job description, and rejecting the claimant's argument that the jobs as actually performed may involve such

8

workplace hazards), *report and recommendation adopted sub nom. Voorhies v. U.S. Comm'r Soc. Sec. Admin.*, 2022 WL 4492995 (W.D. La. Sept. 27, 2022). Claimant's suggestion that the requirement to place items on shelves *might* involve the use of a ladder, which the ALJ prohibited, also fails for the same reason where the DOT indicates that climbing is not present, DICOT 920.687-014.

The VE testified that her opinion was consistent with the DOT, (R. 58), and there are no apparent conflicts between the VE's testimony and the DOT. Accordingly, the ALJ satisfied SSR 00-4p and *Pearson*, and the VE's testimony constitutes substantial evidence supporting the ALJ's step five determination.

## VI. CONCLUSION

For the reasons stated above, and the decision of the Commissioner is affirmed.

So ordered, the 3rd day of June, 2024.

Robert B. Jones, Jr.
United States Magistrate Judge

9